774 So.2d 787 (2000)
Margarete DALK, Appellant,
v.
Bonnie ALLEN, Appellee.
No. 5D00-267.
District Court of Appeal of Florida, Fifth District.
December 15, 2000.
*788 Christopher J. Klein of Baur, Woodbridge, Reus & Klein, P.A., Miami, for Appellant.
William H. Phelan, Jr., of Bond, Arnett & Phelan, P.A., Ocala, for Appellee.
ORFINGER, M., Senior Judge.
Margarete Dalk, half-sister of decedent Christel D. McPeak, appeals an order of the trial court admitting to probate a will offered by appellee Bonnie Allen, who is the named personal representative and one of the beneficiaries in the contested document.
The primary issue here is whether the will was properly executed in accordance with the requirements of section 732.502, Florida Statutes, which, among other things, requires that every will be signed at the end or that the testator's name be subscribed at the end of the will by some other person, in the testator's presence and at his direction. The document offered for probate concluded as follows:
*789
 IN WITNESS WHEREOF, I hereunto sign by name, and publish and declare
this to be my Last Will and Testament in the presence of the persons witnessing
it at my request on this 20th day of March, 1998.
 _____________________________________
 CHRISTEL D. KcPEAK, TESTATRIX
 WE HEREBY CERTIFY that the foregoing instrument was on the day and date
hereof signed, sealed, published and declared by the Testatrix, CHRISTEL D. McPEAK,
as and for her Last Will and Testament, in our presence, who, at her request, in her
presence and in the presence of each other, have subscribed our names hereto as
Witnesses of the execution thereof, believing said Testatrix, at the time of so
signing, to be of sound mind and memory.
 residing at 1909 Pebble Beach Road 
HERBERT F. BAKER, WITNESS Ocala. Florida 34472 
 residing at 1909 Pebble Beach Road 
JEMMA A. BAKER, WITNESS Okala. Florida 34472 
STATE OF FLORIDA
COUNTY OF MARIGN
 We, CHRISTEL D. McPEAK, the Testatrix, and HERBERT F. BAKER and JEMMA A.
BAKER, the Witnesses, whose names are signed to the attached or foregoing
instrument, having been sworn, declared to the undersigned officer that the
Testatrix, in the presence of Witnesses, signed the instrument as her Last Will and
Testament, that she signed, and that each of the Witnesses, in the presence of the
Testatrix, and in the presence of each other, signed the Will as a Witness.
 __________________________________
 CHRISTEL D. McPEAK, TESTATRIX
 
 JEMMA A. BAKER, WITNESS
 Subscribed and sworn to before me by CHRISTEL D. McPEAK, the Testatrix,
Identification and by HERBERT F. BAKER and
JEMMA A. BAKER, the Witnesses, who are personally known to me, on this 20th day
of March, 1998.
 
 NOTARY PUBLIC
 ANNE E. DICK
 My Comm Exp. 12/02/98
 Bonded By Service Ins
 No. CCA23930
 
It is obvious from the above that the will was not signed by the decedent. A will is not valid unless it is executed with the formalities required by section 732.502, Florida Statutes. This is to assure the authenticity of the will and to avoid fraud and imposition in its execution. See In re Olson's Estate, 181 So.2d 642 (Fla.1966). Thus, the rule is that in order to make a valid will, the testator must strictly comply with the provisions for formal execution. See In re Watkins' Estate, 75 So.2d 194 (Fla.1954); In re Neil's Estate, 39 So.2d 801 (Fla.1949); In re Bancker's Estate, 232 So.2d 431 (Fla. 4th DCA 1970), cert. denied, 238 So.2d 111 (Fla.1970). Section 732.502(1) provides that every will must be signed at the end, or the testator's name *790 must be subscribed at the end of the will by some other person, in the testator's presence and by the testator's direction. § 732.502(1)(a), Fla. Stat. (1997). Further, the signing or acknowledgment that the testator has previously signed the will or that another person has subscribed the testator's name to it, must be made in the presence of at least two attesting witnesses, who must sign the will in the presence of the testator and each other. § 732.502(1)(b) & (c), Fla. Stat. (1997). If execution in the manner specified is not proven, the instrument is not entitled to probate. Furthermore, in all proceedings contesting the validity of a will, the burden is upon the proponent of the will to establish, prima facie, its formal execution and attestation. § 733.107, Fla. Stat. (1997).
At the meeting with the attorney, there were eight documents which required Mrs. McPeak's signature; four duplicate originals of the "Living Will and Designation of Health Care Surrogate," three duplicate originals of the "Durable Power of Attorney" and the original "Will." The trial court found that all the documents were reviewed by Mrs. McPeak, who expressed to her attorney that they met with her approval and complied with her wishes. The court then found:
9. On March 20, 1998 each of the duplicate original Living Wills and Powers of Attorney were fully executed, witnessed, and, in the case of the Powers of Attorney, notarized.
10. On March 20, 1998 the "Last Will and Testament of Christel D. McPeak" was witnessed and notarized in the presence of Mrs. McPeak and in the presence of Attorney Baker, Jemma Baker and Anne Dick. However, due to confusion in circulation of multiple original documents for signature and mistake, that document was not physically signed by Mrs. McPeak.
11. Nevertheless, during the joint meeting for signature of documents, Mrs. McPeak did declare in the presence of witnesses and the notary the "Last Will and Testament of Christel D. McPeak", necessarily including the typed signature affixed thereon, to be her Last Will and Testament.
It is undisputed that the decedent did not request someone else to subscribe her name nor is there anything in the record to support a conclusion that she intended the typewritten name below the signature line to be her signature. It is clear from the record and the trial court's findings of fact, that the absence of a signature resulted from a mistake. The decedent apparently intended to sign the will, but clearly she did not. While we recognize that her intentions, as expressed in the purported will, may have been thwarted by operation of the statute, nevertheless the will is not entitled to probate for lack of her signature. See In re Olson's Estate, 181 So.2d 642 (Fla.1966). Once a will is declared invalid, the testator's intent is no longer controlling, and the property must pass according to the law of intestate succession. See In re Stephan's Estate, 142 Fla. 88, 194 So. 343 (1940).
This does not, however, end our inquiry. In the order admitting the will to probate, the trial judge concluded "... that as a matter of law ... a constructive trust would properly be imposed ... in favor of the beneficiaries named in the Will if the Will were not admitted to probate." In In re Estate of Tolin, 622 So.2d 988 (Fla.1993), the court imposed a constructive trust on the assets of a decedent's estate in favor of the beneficiary of decedent's will, after decedent destroyed a copy of a codicil to that will, believing it to be the original. The original will had bequeathed the residuary estate to a friend, Adair Craig, while the codicil had named an art guild as the residuary beneficiary. The stipulated facts before the court made *791 it clear that the decedent had intended to revoke the codicil and reinstate Craig as the residuary beneficiary.
The supreme court held that although what the testator destroyed was an exact copy of the original codicil, believing it to be the original, the requirements of section 732.506 had not been complied with, making the intended revocation ineffective. However, the court then imposed a constructive trust in favor of Craig in order, as it said, to prevent unjust enrichment of the art guild, because of the decedent's mistake and notwithstanding the fact that no fraud was involved. The question here, then, is whether the constructive trust result in Tolin can be applied in this case. We think not. There is no similarity between the "unique" facts in Tolin, and those here. Ordering a constructive trust here would, in effect, be validating an invalid will, and we have found no case law which supports such result. Although the record in this case reveals that the decedent read the document and acknowledged that it complied with her testamentary wishes, at best there is an oral testament clearly invalid under Florida law. Since Tolin, the second district has held a holographic will invalid as not comporting with Florida law, but made no mention of a constructive trust, despite the fact that the holographic will was clear as to the intended disposition of the decedent's estate. See In re Estate of Salathe, 703 So.2d 1167 (Fla. 2d DCA 1997).
Nevertheless, to determine the reach of Tolin as intended by the supreme court, we certify the following question to the court as one of great public importance.
MAY A CONSTRUCTIVE TRUST BE IMPOSED OVER THE ASSETS OF AN ESTATE IN FAVOR OF A BENEFICIARY NAMED IN AN INVALIDITY EXECUTED WILL, WHERE THE INVALIDITY IS THE RESULT OF A MISTAKE IN ITS EXECUTION, AND THE INVALID WILL EXPRESSES THE CLEAR INTENTION OF THE DECEDENT TO DISPOSE OF HER ASSETS IN THE MANNER EXPRESSED THEREIN?
The order admitting the will to probate is reversed, and the cause is remanded to the trial court with directions to consider the counter petition for intestate administration.
REVERSED and REMANDED.
COBB and W. SHARP, JJ., concur.